IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAASIN TAYLOR, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:21-cv-03173 |
| | § | |
| BALL CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT BALL CORPORATION'S
AMENDED MOTION TO EXCLUDE RUSSELL KENDZIOR**

Defendant, Ball Corporation ("Defendant"), files this Amended Motion to Exclude Russell Kendzior in compliance with the Court's Order [D.E. 18]. This motion is filed subject to and without waiving Defendant's motion for summary judgment filed herewith. The Court should grant both motions. In support of its motion, Defendant offers the following:

*Executive Summary*

- This is a slip and fall case.

- Plaintiff designated Russell Kendzior ("Kendzior") as his purported liability expert. The testimony of Kendzior should be excluded because his opinions are unreliable.

- As a threshold matter, Kendzior failed to rule out multiple causes of the alleged injury, which renders his opinions little more than speculation.

- For further argument, should such be necessary, Judge Keith Ellison of the United States District Court for the Southern District of Texas, Houston Division reviewed a nearly identical report by Kendzior in another case and excluded almost all of Kendzior's opinions. *See Jenkins v. Helmerich & Payne Int'l Drilling Co.*, 557 F. Supp. 3d 587 (S.D. Tex. 2021).

- The Court should grant this Motion and exclude the opinions of Russell Kendzior.

## I. BACKGROUND

1. The above-captioned lawsuit arises from a July 25, 2021 alleged incident at a facility owned and operated by an affiliate of Defendant. Plaintiff Jaasin Taylor alleges that he slipped on hot oil while operating a hydraulic lift, causing him injuries. *See* Plaintiff's Original Petition attached to Notice of Removal (Dkt. No. 1, Exhibit 1). Plaintiff seeks recovery from Defendant for negligence and gross negligence.

2. In support of his negligence claim, Plaintiff designated Russell Kendzior as a purported liability expert in this case. *See* Exhibit 1, Expert Report of Russell J. Kendzior dated June 22, 2022. Kendzior's report provides a two-paragraph unsourced summary of the facts attendant in this litigation, just as he did in *Jenkins*:

> It is my understanding that the Plaintiff, Mr. Jaasin Taylor, was employed by the Man Power Staffing Company who sent him to the Ball Corporation Beverage Packaging and Recycling Plant in Conroe Texas to handle materials. On or about Saturday July 24, 2021, Mr. Taylor arrived at the Ball Corporation and found that one of the company's baler-compactors was broken and spilling hot oil onto the concrete walkway. The baler continued to leak hot oil for several hours until the Ball Corporations employees serviced the machine Saturday evening.
>
> 1

> On the following day, Sunday July 25, 2021, Mr. Taylor returned to the Ball Corporations facility and found that the same machine was spilling hot oil on the floor. Mr. Taylor continued his work for Man Power at the Ball Corporation facility, which consisted of handling, moving and stacking crushed aluminum bricks to a pallet using a hydraulic lift. As Mr. Taylor began to operate the machines lift, he slipped on hot oil that was spilled on the floor which caused him to fall striking his body on a piece of machinery on the way down. Plaintiff landed on his back and laid in the fetal position on the hot oil for several minutes.

(*Id.* at Pages 1-2).

Also like he did in *Jenkins*, Kendzior next identifies the standards he "believes are relevant to this case" (*Id.* at Page 2) without any explanation or support for the

basis for his belief. As shown below, Kendzior's "copy and paste" boilerplate is meaningless since Kendzior admitted that no standardized testing exists for applying his theories. Using almost identical wording to *Jenkins*, Kendzior's report concludes with the opinions he intends to offer at trial:

> 1. The condition of the walkway at the time of Mr. Taylor's fall constituted a dangerous condition and posed an unreasonable risk of harm.
>
> 2. The Defendant knew or reasonably should have known of the dangerous condition of the walkway prior to Mr. Taylor's slip and fall and should have placed absorbent pads on the walkway and posted warning signs as to alert workers to the impending slip hazard.
>
> 3. The Defendant failed to exercise reasonable care to reduce or eliminate the dangerous condition of the walkway.
>
> 4. Prior to Mr. Taylor's fall, The Defendant was consciously aware of the dangerous condition and had time to either: (a.) remedy the condition by way of stopping the hot oil leak, (b.) remove the accumulation of oil from the walkway, and (c.) restrict access of the area by way of a barricade.
>
> 5. The dangerous condition that was present on the walkway was the proximate cause of Mr. Taylor's slip-and-fall event and subsequent injuries.
>
> In conclusion it is my opinion that the Defendant did not provide a reasonable degree of care as it relates to properly maintaining their equipment and by safeguarding their walkways as to protect their employees specifically Mr. Taylor, from the risk of injury. Had the Defendant exercised a reasonable level of care of their walkways, it is more likely than not that Mr. Taylor would not have slipped and fallen and subsequently injured himself.
>
> Sadly Mr. Taylor slip and fall event and subsequent injuries were entirely and easily preventable had the Defendant simply complied with the industry standards detailed above which establish the means by which companies like that of the Defendant should provide their employees and contracted employees a safe walking surface. My opinions are based upon a reasonable degree of professional certainty which are derived from my education, professional training, and experience which I reserve the right to amend my opinions as new information may be presented to me in the future.

As the Court can see, Kendzior relies on a generic blaming of "companies like that of Defendant" which is another clear "copy and paste" job used to be versatile for report after report. In fact, Kendzior knows essentially nothing about Defendant:

> Q. Sure. Have you ever worked at Ball, been trained at Ball, had any involvement with Ball itself?
> A. No.

3

| | | |
|---|---|---|
| Q. | | Have you done any research regarding Ball or its operations? |
| A. | | Research in what way? |
| Q. | | For example, research about Ball on the company website, or maybe a publicly traded finance page from the Internet, or marketing materials that Ball may have, anything like that concerning Ball. |
| A. | | No. |
| Q. | | Do you have any background of any kind with manufacturing or recycling of aluminum cans? |
| A. | | No. |
| Q. | | Do you have any background of any kind with a baler, or briquetter machine, as it's been described in this case? |
| A. | | No. |

(Exhibit 2, Excerpts from the deposition of Russell J. Kendzior dated February 10, 2023, Page 17, Line 21 to Page 18, Line 13).

## II.    STANDARD OF REVIEW

3. The party proffering expert testimony that has been challenged has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *See* Fed. R. Evid. 104(a); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The trial court's decision concerning the exclusion of expert testimony is reviewed for an abuse of discretion and the ruling will not be disturbed unless it is manifestly erroneous. *Macy v. Whirlpool Corp.*, 613 Fed. Appx. 340, 342 (5th Cir. 2015).

4. Federal Rule of Evidence 702 governs the admissibility of expert testimony, permitting opinion testimony by a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the opinion is: (1) "scientific, technical, or other specialized knowledge that will help the trier of fact to understand

the evidence or to determine a fact in issue"; (2) "based on sufficient facts or data"; (3) "the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." *Jenkins v. Helmerich & Payne Int'l Drilling Co.*, 577 F. Supp. 3d 587, 591 (S.D. Tex. 2021); *See* Fed. R. Evid. 702.

5. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the United States Supreme Court held that trial courts must determine whether expert testimony is "not only relevant, but reliable," under Rule 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Fifth Circuit Court of Appeals held in *Brown v. Illinois Cent. R. Co.*, that in order for a trial court to determine the reliability of expert testimony, the court "must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quoting *Daubert*, 509 U.S. at 592-93). The reliability of an expert opinion is essential, otherwise, "it offers no expert assistance to the jury." *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

A. **Ruling Out Other Plausible Causes of Injury is a Threshold Requirement for Admissibility**

6. The "reliability" prong requires the expert to rule out other plausible causes of injury. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423 (5th Cir. 1987); *Omni USA, Inc. v. Parker-Hannafin Corp.*, 964 F. Supp. 2d 805, 837 (S.D. Tex. 2013)

5

(excluding mechanical engineer's conclusion regarding cause of seal leakage when engineer failed to rule out other possible causes of leakage); *Guzman v. State Farm Lloyds*, 456 F. Supp. 3d 846, 853 (S.D. Tex. 2020) (excluding public adjuster's storm damage opinions for failure to rule out other possible causes, such as normal wear and tear); *Emmett Props. v. Halliburton Energy Servs.*, 157 S.W.3d 365, 373 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (striking water expert's report for failure to consider alternative causes of contamination); *Cerny v. Marathon Oil Corp.*, 480 S.W.3d 612, 622 (Tex. App.—San Antonio 2015, pet. denied) (in a nuisance and negligence claim concerning toxic exposure, the court held "an expert's failure to rule out alternative causes of injury renders the opinion unreliable, and legally constitutes no evidence."). The failure to rule out other plausible causes of injury is fatal to the admissibility of the expert's opinions. *Id.*

### B. The Expert Must Also Have a Reliable, Independently Validated Methodology That Assists the Jury

7. To satisfy the "reliability" prong, a party must also demonstrate (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)); *see also Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016). "Reliability" requires that the proponent of the expert testimony must present some objective, independent validation of the expert's methodology. *Brown*, 705 F.3d at 536. The objective of the Court's gatekeeping role is to ensure that an expert "employs in the courtroom the same level of intellectual

6

rigor that characterizes the practice of an expert in the field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188 (5th Cir. 2006).

8. Importantly for the purposes of this motion, a trial court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumbo Tire Co. v. Carmichael*, 526 U.S. 137 157, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Brown v. Illinois Cent. R. Co.,* 705 F.3d 531, 537 (5th Cir. 2013) (noting that "without more than credentials and a subjective opinion," and expert's testimony that something "is so" is not admissible) (internal quotations and citations omitted).

9. In summary, where a challenged opinion "is fundamentally unsupported, then it offers no expert assistance to the jury." *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005); *Guzman*, 456 F. Supp. 2d at 853.

### III. MOTION TO EXCLUDE KENDZIOR

10. In support of excluding Kendzior's, Defendant relies on true and correct copies of the following:

| | |
|---|---|
| Exhibit 1: | Expert Report of Russell J. Kendzior dated June 22, 2022 |
| Exhibit 2: | Excerpts from the deposition of Russell J. Kendzior dated February 10, 2023 |
| Exhibit 3: | Excerpts from the deposition of Jaasin Taylor dated January 24, 2023 |
| Exhibit 4: | Expert Report of Russell J. Kendzior dated June 1, 2021 from the *Jenkins* Case |
| Exhibit 5: | Comparative Chart |

## IV. ARGUMENT AND AUTHORITIES

### A. Kendzior Failed to Rule Out Other Plausible Causes of Injury

11. Kendzior's CV identifies that he is a member of the American Association of Fraud Examiners (Exhibit 1, Expert Report of Russell J. Kendzior dated June 22, 2022, "Professional and Trade Associations."). Kendzior also testified in deposition that he has written about fraudulent slip and fall claims in his books (Exhibit 2, Excerpts from the deposition of Russell J. Kendzior dated February 10, 2023, Page 25, Line 23 to Page 26, Line 19). In slip and fall claims, fraud can occur when the claimant fakes the incident entirely or simply exaggerates his injuries (*Id.* at Page 25, Line 10 to Page 26, Line 14). Every year, up to 10% of slip and fall cases are fraudulent. *Id.* Kendzior identified the following potential "red flags" for fraudulent slip and fall claims, all of which exist in this case:

| Red Flag | Presence of Red Flag in this Case |
| --- | --- |
| Unwitnessed incident. *Id.* at Page 28, Lines 4 to 7. | It is undisputed that no one but Plaintiff was present at the alleged incident. |
| Claimant with a criminal history. *Id.* at Page 28, Line 25 to Page 29, Line 11. | Plaintiff testified in deposition that he was convicted for felony arson, hindering prosecution, and insurance fraud. Exhibit 3, Excerpts from the deposition of Jaasin Taylor dated January 24, 2023, Page 32, Line 4 to Page 33, Line 12. He was also convicted for violation of laws governing sexually oriented businesses. *Id.* at Page 31, Lines 19 to 25. |
| Claimant who retains counsel quickly after incident. Exhibit 2, Excerpts from the deposition of Russell J. Kendzior | Plaintiff filed suit on August 18, 2021 which was only 24 days after the alleged incident on July 25, 2021. *See* |

8

| Red Flag | Presence of Red Flag in this Case |
|---|---|
| dated February 10, 2023, Page 32, Lines 15 to 17. | Plaintiff's Original Petition attached to Notice of Removal (Dkt. No. 1, Exhibit 1). |

Although Kendzior's CV touts his fraud investigative background and he has even written books that cover fraudulent slip and fall claims, when pressed in deposition in this case, Kendzior admitted: "I'm not a professional fraud investigator, so I'm probably not qualified to render opinions specifically about fraud in this matter." (Exhibit 2, Excerpts from the deposition of Russell J. Kendzior dated February 10, 2023, Page 32, Lines 18 to 23). Nevertheless, because Kendzior opined that in general (beyond this case) fraud definitely exists and takes place up to 10% of the time, with two other red flags for fraud present (criminal history and quickly retaining counsel), fraud is a plausible cause of injury and damage in this case. Kendzior admits he is not qualified to opine regarding fraud in this case. Therefore, he cannot rule out fraud which is a plausible cause of injury because there are possible red flags in this case and fraudulent slip and fall claims are a problem nationwide. Kendzior must be excluded for failure to rule out fraud.

12. Kendzior also failed to rule out Plaintiff's own comparative responsibility, which Defendant has pled as an affirmative defense (Defendant's First Amended Answer, Dkt. No. 5, Paragraph 16). In deposition, Kendzior conceded as follows:

> Q. Well, I'm just asking, sir, is there anything in your report where you note -- that you say something like, nothing Mr. Taylor did was wrong? Nothing he did contributed?

9

> A. No, I don't recall putting -- that's not in my report.
> Q. So you didn't specifically address Mr. Taylor's acts or omissions in your report?
> A. Again, it's just based on the facts that I've been presented, the evidence I've reviewed. I'm not here to speculate about what Mr. Taylor could have done. Okay. I don't -- I don't do that, generally.
> Q. Did you rule out Mr. Taylor's acts or omissions as a cause of the loss?
> A. I don't -- I didn't rule it in or rule it out.

(Exhibit 2, Excerpts from the deposition of Russell J. Kendzior dated February 10, 2023, Page 79, Line 20 to Page 80, Line 10).

13. Kendzior's "analysis" thus essentially writes Plaintiff out of the story, considering only Defendant's alleged wrongdoing. Plaintiff's comparative responsibility is a plausible cause of loss because the alleged oil slick that caused the incident was so obvious to Plaintiff that he took pictures of the slick before he fell and put them in his petition (*See* Plaintiff's Original Petition attached to Notice of Removal (Dkt. No. 1, Exhibit 1)). Moreover, Defendant expressly asserted Plaintiff's comparative responsibility, so Kendzior should have examined same in his conclusory analysis of proximate cause. Because Kendzior failed to rule out the plausible cause of injury in Plaintiff's comparative responsibility, or any act or omission by Plaintiff, Kendzior must be excluded.

**B. Admissions by Mr. Kendzior That Also Preclude Admission of His Opinions**

14. For further argument, should such be necessary, Kendzior testified in his deposition that he did not test the makeup of the oil or hydraulic fluid present at the location of the incident:

10

> Q: Okay. And we've already established, sir, that you didn't test the surface, any fluids, or coefficient of friction in this case, correct?
> A: That's Correct.
> Q: And you don't know the makeup of the oil or hydraulic fluid from the machines?
> A: No, I've not actually examined the actual fluid. And I – my understanding, it was hydraulic fluid, which is oil – an oil-based product.
> Q: Sure. But we don't know what particular brand or grade; is that correct?
> A: Yeah. I – I don't know. That's correct.
> Q: Okay. And you didn't examine the soap either?
> A: That's correct."

(Exhibit 2, Excerpts from the deposition of Russell J. Kendzior dated February 10, 2023, Page 36, Line 13 to Page 37, Line 2).

15. Mr. Kendzior also testified in his deposition that he did not conduct coefficient friction testing of the surfaces at the location of the incident:

> Q: So just to be clear, sir, you didn't go to the Ball location, and you didn't test any test surfaces there; is that correct?
> A: That's correct.
> Q: And you didn't test the floor where the alleged incident occurred; did you?
> A: No.
> Q: Did you run any tests on Mr. Taylor's shoes that he was wearing?
> A: I don't know what types of shoes Mr. Taylor was wearing and did not perform any tests.
> Q: Any tests of any kind on anything?
> A: No. I've not performed any tests in this matter.
> Q: Did you do any testing of coefficient of friction?
> A: No.

(*Id.* at Page 16, Line 20 to Page 17, Line 11).

11

16. Moreover, Mr. Kendzior stated in his deposition that there is no reliable national testing standard for testing the hydraulic fluid or the "dangerous" condition of the surface of the floor:

> Q: But it sounded, by your earlier testimony, sir, that there is no methodology that could be applied. I think you mentioned that there were no standards for testing or measuring by various national organizations; is that correct?
> A: Yes, And that's, you know – that's – oftentimes a lot of these matters, just due to insufficient good lawyering, get discharged because the relevant information, like what you just asked, wasn't presented. So you can't test a – a walkway with hydraulic fluid to any national standard with any test method. Nothing's recognized.
> You can come up with data and say, wow, oil is really slippery on the floor. Well, okay. I think that would be fair to say. Everybody would under – everybody would understand that. What the exact coefficient of friction is, as I was mentioning earlier, is a bit irrelevant.
> My opinions, as you saw on the screen before, speak to the fact that having hydraulic fluid on the floor, known to be on the floor, discharging at the time, on the floor, represents an unreasonably dangerous condition to workers who have to work in that area. That's – that's my opinion. And presumably, that was my opinion in the case that you have on the screen of Jenkins vs. Helmerich & Payne Drilling.

(*Id.* at Page 41, Line 4 to Page 42, Line 5).

> Q: Well, no, sir. My question is, in the Taylor case, did you also not use a testing method, testing battery, or national standard to arrive at your conclusion about the dangerous condition of the surface?
> A: Well, those are two different questions. I did not perform any testing. As I mentioned earlier, there's no way to test that particular surface with any credibility. And so testing a surface via an – an orthodox or undefined principle, in – in my industry,

12

> as a scientist would be simply to confuse or mislead the jury. And so no, in the absence of a recognized test method, testing was not done.

(*Id.* at Page 70, Lines 5-17).

17. These admissions by Kendzior in this case are important because Kendzior made essentially the same admissions in the *Jenkins* case, which admissions Judge Ellison turned to over and over again in determining that Kendzior's opinions were unreliable, speculative, and did not assist the jury. The Court in *Jenkins* excluded four of Kendzior's six opinions in their entirety, and excluded two others both in part. *Jenkins*, 577 F. Supp. 3d at 596-598. Again, Kendzior's report in *Jenkins* is almost identical to Kendzior's report in this case. Respectfully, this Court should follow *Jenkins* and expand upon its holdings to exclude Kendzior's opinions.

### C. A Side By Side Chart Comparing Kendzior's Opinions in *Jenkins* to His Opinions in This Case Shows That Kendzior Must be Excluded

18. Defendant respectfully refers the Court to Exhibit 5 which demonstrates why Judge Ellison properly excluded many of Kendzior's opinions in *Jenkins* and why this Court should follow *Jenkins* and expand upon its holdings. Although the Court in *Jenkins* sets forth Kendzior's opinions in detail, Kendzior's report containing his opinions is also attached hereto for completeness so that this Court can see that Kendzior's report is mainly a form with voluminous extraneous information and self-promotional marketing materials. *See* Exhibit 4, Expert Report of Russell J. Kendzior dated June 1, 2021 from the *Jenkins* Case.

19. For the above reasons, Kendzior's expert opinions are unreliable, irrelevant, and not helpful to the jury. Therefore, the Court should exclude Kendzior and his opinions.

## V. CONCLUSION AND REQUEST FOR RELIEF

Defendant Ball Corporation prays that this Court exclude Russell Kendzior and his opinions from pretrial and trial of this matter. Defendant Ball Corporation requests all other relief to which it may be entitled.

Respectfully submitted,

*s/ Karl A. Schulz*
Karl A. Schulz
Texas State Bar No. 24057339
S.D. Texas Bar No. 884614
COZEN O'CONNOR
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3900
Telecopier: (832) 214-3905
kschulz@cozen.com

ATTORNEY FOR DEFENDANT,
BALL CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record via the Court's electronic filing system on March 3, 2023.

    Anthony G. Buzbee
    Ryan S. Pigg
    Cornelia Brandfield-Harvey
    Mauricio Guevara
    The Buzbee Law Firm
    600 Travis Street, Suite 7300
    Houston, Texas 77002
    ledelacruz@txattorneys.com
    rpigg@txattorneys.com
    cpb2119@gmail.com
    cbrandfieldharvey@txattorneys.com
    mguevara@txattorneys.com
    ***Attorneys for Plaintiff***

    *s/ Karl A. Schulz*
    Karl A. Schulz